Good morning, Your Honors. My name is Sarah Hedgpeth Harris. I'm counsel for the appellant in this matter. My colleague is Brian Enos. I'd like to reserve about five minutes for rebuttal in this case. All right. If you'll keep track of your own time, I will try to remind you, but you're on your own, basically. Thank you, Your Honor. We're here this morning because approximately a year ago, this past March, the United States Supreme Court issued its decision in Hoffman Plastics v. National Labor Relations Board. You wouldn't have appealed otherwise? Well, I don't think – I think that this is a logical progression in issues that came from Hoffman. I understand that, but you said we're here because of Hoffman. Does that mean you would not have appealed the order? No, we would have appealed, but I think that that – So we're not really here because of Hoffman? Well, I think we're here because this is one of the logical extensions of Hoffman. Hoffman holds that an undocumented worker is not entitled to back pay because it violates IRCA. Because I want to know, if we disagree with your view of that, does that mean the other side wins? No. So, all right. We're here because the issues that were certified for appeal is whether IRCA prohibits discovery. Hoffman holds that, in terms of relevancy, that undocumented workers are not entitled to back pay for a number of policy reasons. The logical question – next question that is raised in our case is whether IRCA prohibits judicial discovery regarding work authority or immigration status. Can I ask you a couple of questions about the focus and intent of this discovery? Do I understand correctly that your client does not intend to use this information to affect the employment status of any existing employee? That's correct. And that you don't intend to transfer the information to the government for purposes of if some of them turn out to be undocumented? Is that correct? That's absolutely correct. You're seeking it because you think it and argue that it relates to the back pay issue? Yes, under Title VII and also that under California law, under FEHA, we think we have an argument under the Murillo case that at least to the extent that it relates to the termination claim, that it's relevant as far as that case goes and may bar that claim. But as a general proposition, if you are allowed access to this information, you simply want to use it to affect the kind of relief that the plaintiffs might otherwise be entitled to. Is that right? That's correct. Okay. Now, my understanding is that after Hoffman, that the plaintiffs proposed to the court a methodology for dealing with that issue. Is that correct? That's correct. And as we sit here today with this interlocutory appeal in front of us, that procedure has not either been rejected or approved? That is correct. If that procedure was accepted by the district court, would it satisfy your client's concerns? Not to the extent that it is solely a post-trial procedure. Because particularly with respect to the FEHA claim, we would like to be able to file a pretrial dispositive motion challenging the validity of that FEHA claim as to whether or not they can proceed. Leave the FEHA claim aside for the moment. Okay. Your answer is if it's still for the federal claim, you would not be satisfied with the procedure. Yeah, and I think that there are a number of reasons here. And when you read the transcript, I think the district court has some real concerns about it, too. I think the most important or the most significant objection we have is that it would mean that plaintiffs, some of the plaintiffs to the extent that they are not authorized or were not authorized to work in the United States, would be able to put those claims before the trier of fact, knowing that they're not entitled to a remedy based upon those claims. That leads me to my question, which may be the $64 or $300 million if we're talking in terms of lottery questions. And that's this. Does your client wish us to rule on the merits of whether Hoffman applies to Title VII? Well, I think what my client would like the court to rule on is whether IRCA prohibits discovery so that the district court can exercise. That's not my question. Let me make sure I understand it. Well, you started out telling us we're here because of Hoffman. Right. Now, Judge Hawkins asked you, do you want us to rule on whether Hoffman applies to Title VII? I think that's probably a foundational ruling to get into the question that was certified for appeal. Okay. You believe that that issue, the merits of whether Hoffman applies to Title VII, is, A, properly before this court? Yes or no? Yes. Okay. And you believe that we ought to rule on the merits of that question? I think to the extent that it's necessary to rule on the issue of whether IRCA prohibits discovery, yes. I think it's already – It's not your contention that this case can be resolved at a level below reaching that merits issue? At a level below? I think that the case can be resolved by addressing specifically, does IRCA, does that legislation preclude or prohibit discovery? Does it create a discovery privilege regarding information pertaining to immigration status? Can I put it a little differently? Whether because of Hoffman, the judge was without discretion, it was an abuse of discretion for the judge to conduct his trial in the way he did, prohibiting discovery, at least for now, of these facts. I think that it was assumed below, when you look at the transcript of the proceedings, it was assumed below that Hoffman applied, that this was relevant and that Hoffman extended and applied. What the court did was it said, but I still can't determine that the protective order is contrary to law because it's unsettled whether or not IRCA prohibits discovery. And that was the unsettled and the controlling issue, legal issue in the case. That's why the court certified that issue for appeal. I guess what I'm asking, I think I know what you would like us to rule on the merits with respect to the application of Hoffman to Title VII. But there's no doubt in your mind that the merits issue is before us. The merits of Hoffman, I think that it is something that is implicit in the decision about IRCA, about whether IRCA prohibits discovery. You believe that we have to reach that issue in order to resolve the question certified to us? Whether you have to resolve that issue. I think that the relevance of the evidence that is being sought is there, regardless of Hoffman, if you look at just the Feehaw claim. There's nobody trying to trap you or push you into a concession. Maybe I'm not understanding your question. I simply want to know if you feel that it is essential for this panel to reach the merits of the application or not of Hoffman to Title VII. I think that you do in order to get to the IRCA question. Okay, all right. Thank you. Okay. So I think what IRCA did is, I mean, what Hoffman did is establish unmistakably that the evidence is relevant to the Title VII claim. But what it doesn't decide, obviously, is the privilege, is whether or not there's a judicial There's no claim at all that can be made? Or only no damages and no reinstatement? I think under the Title VII, there's no damages and no reinstatement and no front-panel reinstatement. No relief of any kind can be ordered for the violation? I don't believe that that's what Hoffman says, no. You don't believe what is? I think that Hoffman, what Hoffman and McKinnon, what those cases say, is they're not entitled to reinstatement or front-panel reinstatement or back pay. Well, can you rely upon McKinnon and set Hoffman aside entirely? Can we rely on McKinnon? Well, I think Hoffman goes beyond McKinnon. McKinnon caps back pay to the point at which it's discovered, the undocumented status is discovered. And Hoffman goes beyond that and says that, you know, the back pay claim in its entirety is precluded, is foreclosed. My question to you was, are you saying we have to dismiss the suit? Or just that those damages can't be obtained, reinstatement and the damages you mentioned? The latter. Or is there more cases to be dismissed? No, under Title VII, it's not that the whole case is dismissed. So on liability, these questions are irrelevant? Under Title VII. Yeah. Under Title VII. Now, on the issue of whether IRCA prohibits discovery, the discovery privilege, the plaintiffs here relied on the verification regulations, the 274A2, and argued that judicial discovery was tantamount to verification of employment. And when you look at that section, it's entitled verification of employment eligibility, and the very first sentence says, this section states the requirements and procedures persons or entities must comply with when hiring, when recruiting, or referring for a fee, or when continuing to employ individuals. We're not dealing with any of those things here. We're in an entirely different context. We're dealing with litigation. There's been a claim. Also, our review is somewhat different, too. Our review is whether the district judge abused his discretion in deciding not to allow discovery at this stage. No, I think that what the district judge did was certify a purely legal question here in saying that I can't decide whether or not this protective order is contrary to law because there is a controlling issue on which there is no controlling authority, and that's the legal issue of whether IRCA prohibits discovery. If you look at the proceedings, every single one of the hearings pertaining to the reconsideration order, the court there was looking to find a way to modify the protective order. And we could go in after this proceeding here before this court and seek to modify that protective order, and there would still be the legal question of, well, if we look at Hoffman now and say the balancing that the magistrate did was pre-Hoffman and now it's more relevant, we still have the issue of whether IRCA bars discovery, and that legal issue has to be answered before the court can look at this and decide whether or not under this changed circumstances. Is that where we usually handle discovery orders, where we resolve them on interlocutory appeals when the judge has a question of law regarding the scope of a discovery order? When the matter is certified for appeal, my understanding is that you resolve the issues that are certified for appeal. Unless it was improvidently granted. That's correct. But I'm assuming at this point in time that the court has determined that it was providently granted. That's it. I'm assuming that the legitimate legal issues. It may just be curiosity. My question to you is, is this the way we normally handle discovery orders by dealing with them on interlocutory appeal when the judge has a legal question about the discovery order? I think that this is an unusual case, and this is why. Number one is I think that the circumstances change significantly from the time of the original discovery order to the time at which the court certified the legal issues for appeal. For example, let's say after this we went back in and said, Judge, we would like you to modify this protective order, move for modification as opposed for reconsideration. The court would be able to look afresh at the circumstances and the law that now applies in this context and engage in the Rule 26 balancing over again. But the court would still be confronted with the same issue, which is, okay, we determine now that the evidence is much more relevant than it was when the magistrate was looking at this discovery order, but we still don't know whether or not IRCA prohibits discovery. So that issue has to be resolved. Did the district court rule that IRCA precludes discovery entirely or just during the liability phase of the trial? The district court did not make a finding as to whether or not IRCA prohibited discovery. What the court said and continually said, Plaintiffs, can you give me specific language that shows that IRCA bars discovery? No. Well, there is no controlling law. No, there isn't. Well, then I can't find that this is contrary to law because there is no controlling law. But it granted the protective order. Pardon me? It granted the protective order. The magistrate granted the protective order pre-Hoffman, pre-before the circumstances changed. When it came time that the district court was looking at that under the standard of review that the district court had saying, is this contrary to law? And it may have changed with respect to the question of relevancy, but there was still that unresolved issue about whether or not IRCA bars discovery. And the district court said, I can't find, Hoffman doesn't resolve the specific narrow discovery issue. I need to have this resolved in order to I got appointed. Pardon me? The next question I have for you is, if you fired 20 white workers for being in a theft ring, would you ask them where they were born, what their citizenship was? I think if they were claiming back pay. So your practice from now on is going to be to ask all workers who were fired I think if there's a claim of back pay, I think if there's a claim of back pay. But I think in this case that, I mean, there was some red flags that went up that suggested that this might be a relevant area of inquiry from the get-go, from the very beginning of the deposition in this case. What are the red flags? Well, I think when the question was, I mean, the very first question that was asked was, where were you married? And when they came forward with this protective order that says you can't ask any question that relates to immigration status, I mean, it's in effect kind of an elephant in the room in terms of it clearly indicates that there's something here. And I don't think counsel would have continued to press this. The problem may be wanting to tell you that you're down to four minutes. Down to five minutes. I can see that. I can see that. I'd like to reserve the rest of my time and rebuttal. Thank you, Your Honor. Thank you. Good morning, and may it please the Court. My name is Christopher Ho. I'm the counsel for plaintiffs' appellees in this manner, and I'd also like to introduce my co-counsel, William Nguyen, sitting at the counsel table. I won't bother to rebut some of the statements that my opposing counsel has made, though I would disagree with several. I think that appellees would respectfully invite the Court to reach the threshold issue of whether Hoffman Plastics does apply in this case or not. But as counsel stated, it's really what brought this case here to begin with. Do you think they wouldn't have appealed the order if Hoffman Plastics had not been decided? Well, the order was issued first. Were they satisfied with the order? No, they were not. And why do you think they wouldn't have appealed it? I think they would have appealed it in any case, but I think that what got them here. Not Hoffman Plastics had brought us here. But they moved to reconsider, didn't they? They moved to reconsider, and the district judge denied the motion for reconsideration. Consideration was in light of Hoffman? That's my reading of it, Your Honor. And I believe, though I have no idea of knowing, that that's the basis on which the motions panel granted this interlocutory appeal. Well, if you can tell me why the motions panel granted it, you're really a mind reader. I'm sorry. I didn't hear you, Your Honor. All right. We don't know why the motions panel granted it, do we? No, certainly not. But the one thing you agree with in your opponent's argument is that we need to reach the merits of whether Hoffman Plastics applies to Title VII and the California statute. I think there are many bases for decision, but I think that that would resolve most of the issues before us. The question isn't whether it would resolve the issues. The question is whether we need to reach it in order to resolve the issue. Your Honor, I think you do need to reach it, because — Tell us why. You need to reach it because, as a threshold issue, there is a serious question as to whether Hoffman applies either to Title VII. Why does that serious issue determine the outcome of this? Why do we have to reach it? Well, I suppose that there are ways in which you might be able to pass on the issue and say that even if Hoffman did apply to Title VII, that there are other ways of — Does that mean we should reverse the order? It does not. As we argue in our briefs, even if you assume arguendo that Hoffman applies, under the Rule 26 balancing that the magistrate judge took part in in this case, that is also another grounds for denying the discovery and for upholding the protective order. Then, as I understand your answer now, from your standpoint, we don't have to reach it because it doesn't make any difference. Not necessarily. Does the result come out the same way whichever way we decide Hoffman Plastics? I don't think it does. All right. Which way does it come out where we reverse? I'm sorry, Your Honor? Which way does it come out, our analysis of Hoffman Plastics, that would lead us to reverse? I think if you found that Hoffman Plastics did not apply to Title VII, then that would be consistent with reversal. We would reverse the order? I'm sorry. No, you would affirm the order. All right. And if we found that it does — Hoffman Plastics does apply to Title VII, would we reverse? I think it could either be reversed at that point or remanded with instructions to modify the order. I think — How would it be modified? It could be modified in the sense of — well, right as it is now, the order bars questioning going particularly to very specific direct immigration status information and has its limits on disclosure to other types of information. Those parts of the order could be tweaked. On the other hand, the order could stay the same if, leaving aside Hoffman, assuming it applies, arguendo, you did uphold the magistrate on the 26B issue and you could leave it the same way. So your position is, regardless of what we decide on Hoffman Plastics, we should uphold the magistrate? That's correct, Your Honor. Okay. So in your view of this case, then why do we have to reach Hoffman Plastics? If we reach the same result, either way. Well, you're correct, Your Honor. You don't have to reach Hoffman Plastics. I do think that there is a lot — first of all, I do think that this is an issue that's going to occur with a great deal of frequency before the courts. And I think the issue ought to be addressed. Okay. But you understand that we have to be mindful that this entire proceeding in district court could be tried with the ship navigating the waters of the harbor and never touching Hoffman Plastics depth charge, if you will. I mean, the case could be resolved in an entirely proper way that would not require the district court to reach this issue, right? That's conceivable, Your Honor. But, again, you know — In fact, you've suggested, the plaintiffs have suggested to the court a way in which to do that. And that's pending before the court. It's pending before the court. That's correct. If we're projecting out to what the ultimate resolution of the district court proceeding is, because we're in midstream with an interlocutory order, it's conceivable that this issue, the merits issue of Hoffman Plastics and its application, would not be present in a full-scale appeal. That's certainly conceivable, Your Honor. On the other hand, I think that Hoffman — Why wouldn't we want to wait to see whether that's the case or not? Because I think, Your Honor, that between now and trial, the question of our client's immigration status, though I think it is, I think is going to come up in other proceedings. The defense has raised it in any number of different contexts, in terms of trial issues. I think there may be issues of, you know, when the evidence will be presented, if ever. And I think the district court could benefit from the guide to this court, because I think the Hoffman issue may surface in other contexts other than this precise one. Is it your position that the discovery sought here is not relevant for any purpose? What about front pay or reinstatement or back pay for none of those purposes? No, that's not quite our position, Your Honor. I think we're saying that the information — assuming Hoffman does apply, the information is relevant. Well, whether Hoffman applies or not, is it relevant, just setting aside Hoffman? No, it's not, because we believe that Title VII is not affected by Hoffman. And for that reason, we think it's entirely — No, the question, I think, is — forget Hoffman for the moment. Is the information as to whether your clients are aliens or here without documents, let's say, is that relevant to anything involved in the case? No. It's not relevant to reinstatement, an order of reinstatement. No, I'm sorry. I misspoke. It would be relevant to reinstatement and front pay. And front pay, right. Yes. Now, I'm looking at the order that Judge Ishii entered, PR 0445 through 0447. And this — reading his language, this is the language, this is the issue he certified to us. Whether the Immigration Reform and Control Act, ICRA, prohibits defendants from inquiring into the legality of plaintiffs working in the United States through the civil discovery process, and whether IRAC — I assume that's a typo, he means ICRA — prohibits defendants from applying the after-acquired evidence doctrine to determine plaintiffs' legal remedies. I see no mention of Hoffman plastics. And, you know, I would have thought if Judge Ishii wanted our guidance on that issue, he could have said it in the order. Well, the order itself, Your Honor, is not crystal clear on what was certified. That was, I believe, one of several observations that Judge Ishii made when he issued his order. I do think, though, that the law is clear that on a 1292 appeal, the court may examine all issues connected to the order, not just the certified question within the order. So even if that were the, quote, certified question, I think this court can and should reach all the factors which the judges below based their orders on. And that includes the issue of congressional intent behind IRCA. It includes the chilling effect that our clients would undoubtedly be subjected to, regardless of their status in some cases. Well, if it's relevant at some point, they would be affected at some time down the line, wouldn't it? I mean, if they were seeking reinstatement or front pay, they'll have to reveal it sooner or later, right? Or is there some way that's something I've missed here? No, that's correct. And that's why what we are concerned about is the effect of learning that information through traditional civil discovery, publicly conducted discovery. We had proposed the in-camera procedure below as a way of trying to avoid having to litigate these issues, where the information would come to the attention of the court and the court would act accordingly and not grant front pay and reinstatement to our clients. By the way, NBCO, the defendant, no longer owns the plant, so front pay and reinstatement would be a moot question anyway. But we're not saying that if Title VII is covered by Hoffman, the information is still irrelevant. We're saying that what's the best way to get that information? And as you know, Hoffman was not a discovery case. That issue was specifically not reached by the Supreme Court. And so as our backstop in terms of what can we do to try to avoid all these issues was to propose a procedure where the information would be disclosed to the court in camera and not shared with the defense. Well, did you ever propose maybe allowing an order, an agreement, that the parties would not reveal it to anybody outside the court personnel? In other words, your side and the other side. Yes, as I mentioned earlier, the protective order which we applied for to the court had two parts. One, which was certain questions could not be asked, period. And the second part was certain questions can be asked but subject to limits on disclosure. I guess my concern is if we allowed questions in the first group, which are the questions directly going to immigration status, to be asked subject to limits on disclosure, that that still would have very much the same chilling effect that it would have otherwise. I think I would analogize that to the purposes of the rape shield laws. I think in that case the asking of certain questions is in itself an intimidating factor. And I think some of the post-Hoffman case law has made clear that even if immigration status were relevant, there are still some questions that should not be asked. And those are the Flores cases, Topo v. Deere, and a couple others. They have made that balance. Those courts explicitly recognized the chilling effect in this case, in these types of cases, and said even if there's some relevancy, those should not be asked. And, again, that was the analysis that was performed by the magistrate judge when she found that the chilling effect of these questions and its detrimental effect on the congressional intent that Title VII be enforced vigorously through private enforcement actions overweighed, at that point, the back pay cutoff provided by McKinnon. Is it your position that the only basis for a discovery order is that the questioning is prohibited by a statute? Or is it within the discretion of the judge to issue such an order regardless of whether the statute compels it?  Again, I think that, leaving aside the applicability of Hoffman, I think that under Rule 26b-2, there's clearly, and read together with 26c, there's clearly a balancing test that the court needs to apply, and that's an abusive discretion to use. Your position does not depend on whether one of the immigration statutes prohibits the questioning? That's correct. We do discern in IRCA a strong congressional policy that courts resist. Yes. All right. It's not a self-dispositive. Nowhere in IRCA does it say you can't do this in civil discovery. It wasn't meant to do that. It wasn't a civil discovery statute. Did I hear you correctly that you say there's no reinstatement and no front pay involved in this case at all? That's correct, because NIPCO, the defendant, owned the plant for ---- They don't own it anymore. I'm sorry? They don't own it anymore. That's correct, Your Honor. Okay. So those are non-issues. You're just talking about back pay. Correct. Okay. Correct, Your Honor. And, again, you know, we have proposed a procedure by which, assuming that Hoffman applies, that these plaintiff's identities can be carefully limited in terms of their disclosure so that any interest that the defendant might have in not paying any back pay that it would otherwise have to pay is safeguarded. The only thing is that we feel that because of the severe chilling effect that could take place, that that disclosure of information to the court be done in camera. I'd briefly like to address the defense's claims that somehow immigration status would be irrelevant under state law. You know, they've relied on this Murillo v. Wrightstuff Foods case and DICT in that case, but I think the overarching question that the court should take into consideration is whether government code 7285, which was passed by the legislature specifically in response to Hoffman, doesn't make totally clear that immigration status is neither relevant or in any way significant upon a plaintiff's claims, protections, or remedies under the FEHA. Other than reinstatement? Correct. Correct. For purposes of this case, I think that SB 1818 and its enactment of government code 7285 just obviates any argument conceivable that the other side would have that status is relevant to FEHA claims. Well, then the question would be whether that is preemptive. Assume your view of California law, the California statute is correct and that the status alienage can't affect damages. Would that still be true if federal law prohibited it? Well, just last week, this court issued a preemption decision in which it said that if there's any doubt about congressional intent, we are to err on the side of caution and find no preemption, and that intent must be clear and manifest. And I would argue, Your Honor, that there is no such intent here. No court has ever held, for instance, that IRCA preempts Title VII. I think it would be a major leap to go even beyond that to say that IRCA somehow should be read to preempt state law. Well, it's not preempting Title VII or the state law on liability. It has to do with preempting the award of damages. Right. And I think the cases are clear that the states have full authority to go beyond what Congress has enacted in terms of civil rights laws, in terms of remedies and protections. And so I think that it's pretty clear that there is no preemption concern here. So your views are directly opposite on the state law. Your opponent thinks the state law makes it clear that no damages are available, and you think it makes it clear that damages are available. Correct, and that that's been the position under existing law, which was articulated by the legislature when it passed SB 1818. I just wanted to sort of close by talking about what some of the ramifications would be if the protective order were reversed. I think it would be a powerful deterrent against any workers, particularly undocumented workers, from asserting their rights under workplace protective statutes. It would basically denude them of any protections against having their status used against them in a retaliatory or other fashion by an employer. And again, I'm not making any assertions about this particular employer. In terms of congressional intent, I would strongly argue that that was one major concern of Congress in enacting IRCA. If this protective order is not affirmed, you're going to see clients dropping out of cases. You're going to see cases never being brought in the first place, and I think that would be a powerful setback to the congressional intent that these workplace protections be enforced specifically through private enforcement actions, not by the EEOC or other agencies. Unless the court has any other questions, I would submit it on that. Thank you. I have several points. The first of which is that at the time when this deposition was being taken, when the proposed stipulation for a protective order was brought forward, it essentially was limited in scope. It would allow the discoverer, it's very similar to the type of modification of the discovery order that the judge was attempting to do and that we fully support, and that is you can ask these questions, but they can only be used for this limited purpose. They can't be disclosed beyond here. But when plaintiffs went in for the discovery order, they changed that and instead said, no, you're completely barred from any questions or any discovery related to immigration status. Completely barred from discovery regarding or related to immigration status. And so they kind of backtracked with their protective order. We just want to go back to the originally proposed protective order. At the time we couldn't do that, because one of the co-defendants still employed some of these plaintiffs and there was concern that we would be requiring Wade to violate immigration laws by precluding them from utilizing information that a current employee was undocumented. So at that time, but that's no longer an issue. That originally proposed protective order. They proposed something and you rejected it and now they changed their proposal. And what does that have to do with what we do today? I think my point was they had suggested that it isn't a complete bar. Pardon me? They don't suggest that now. No, my point was that they had suggested at this point in time that the discovery order is not a complete bar. And it is a complete bar. It doesn't allow any kind of inquiry or discovery regarding discovery and immigration status. It's a complete bar. And there's no legal authority for that. The other thing is that they said when you ask the question about, well, does the court have discretion here to allow discovery, their position here was, well, yes, the court would have discretion, but it engaged in an exercise of balancing and determined the chilling effect was outbalanced or outweighed the relevancy. That's not the position they took before, and that's why this has been certified. They took the position that the court has no discretion, that IRCA completely prohibits discovery. Why does it matter whether they took a position? If the magistrate said, as she appears to have said, that she was not doing it for that reason, she didn't say I'm doing it because I'm compelled to by statute, she examined the factors. Why can't they support that decision even if they also take the position that she's required to do it? We're now reviewing for an abuse of discretion. We could reject their arguments. The reason that I don't think that this can be limited to an abuse of discretion, and the reason that I think that there has to be a finding regarding the controlling law on IRCA, is that we could go back in at any time and request a modification of that protective order, given the changed circumstances. At the time that the magistrate ruled on the protective order, the prevailing law authority was that undocumented workers are entitled to the same remedies as documented workers. That's no longer the case. I mean, there has to be a reconsideration of that. But what wasn't decided and what now needs to be decided is, okay, now that's not true anymore. The circumstances are different from when the magistrate was originally ruling on this protective order. So let's go back in and reconsider this. We still have that outstanding question. Does IRCA prohibit this discovery, or can the court just exercise its discretion and allow it in a limited manner? The court felt constrained that it didn't have discretion. And one of the decisions, one of the assistance from this court, tell me, Your Honors, does IRCA absolutely prohibit discovery in this case? Do I have any discretion to allow discovery limited in scope and restricted in terms of disclosure? And that's all that we want at this point in time, is ruling on that legal issue so that the court can look at this afresh and engage in that balancing, given the changed circumstances. Didn't Mr. Ho say that IRCA didn't prohibit that discovery? I heard him here say that he did not believe IRCA prohibited discovery. Maybe I misunderstood him. That is not what the argument was below. That was the whole basis. If you read the transcript, that was the whole basis was, well, can I modify this protective order in any manner, counsel, was the question that Judge Ishii was asking. No, you cannot, because IRCA absolutely prohibits discovery. And that was the reason, that was why this was certified for appeal, is because the district court said, well, I can't find any controlling authority. This is a controlling issue in this case.  Because if IRCA absolutely prohibits discovery, it's relevant information that we're completely barred from gaining access to. How does it control the outcome of the case? It controls our ability to ascertain relevant evidence that's relevant to our defense and necessary to our defense of the damages. I said it has nothing to do with liability, so we're past that. It has to do with which individuals you give how much damages. It also has to do with ascertaining the extent of our exposure. We don't know if we're exposed to damages and back pay for 23 plaintiffs or five plaintiffs. If you had an order limiting punitive damages questions, that would be a controlling issue in the case, because you don't know what your liability for punitive damages is. Well, but we also, there's an issue here, I mean, for one thing, Title VII, there's no issue of punitive damages in this case because it's a disparate impact. That's not what I said. I'm trying to find out what kind of issues are controlling. You say an issue that affects how much our damages might be is a controlling issue. Right. That should be decided on interlocutory appeal. Right. What discovery issues would not be appealable on an interlocutory basis? If they didn't go to the core of a defense. In this case, and with respect to our state claims, it goes to a court or a defense. If they have no claim for termination under state law, under Title VII, it goes to the core of their sole remedy virtually in this case, which is the back pay. And if back pay is utilized as a basis for calculating punitive damages and they're able to put a claim for back pay before the court that they know they're not legitimately entitled to, then that increases the punitive damages exposure. I mean, we have no way of ascertaining what the exposure here is. If they're utilizing the fact that they were denied back pay or they weren't paid after they couldn't get a job after they were terminated and they're going to base a claim for emotional distress based upon that, well, we should be able to get evidence in that says, but wait a minute, the reason that you weren't able to get a job, was it because you were unable to mitigate damages? Why weren't you able to mitigate damages? The theory is that a controlling question is something that affects the damages to some of the defendants. That's the controlling question. If the damages in this case are a central issue in the trial, they're a central issue in the trial. As opposed to what kinds of trials where damages don't matter. I think damages are critical in every trial. I think it's always a, I mean, from a plaintiff, for someone who's potentially exposed to a lot of money, the question of whether or not there's evidence to support that claim for damages is extremely relevant and important in controlling in a case. So, yes, this will determine the extent of our liability in this case. All right. Thank you, Your Honors. The case is arguably submitted.
judges: Reinhardt, Siler, Hawkins